UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BENJAMIN CUMMINGS,

        Petitioner,

v.                                           Case No. 3:14-cv-881-J-39JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS AND
ATTORNEY GENERAL OF THE STATE
OF FLORIDA,

        Respondents.

_____

## ORDER

### I. INTRODUCTION

Petitioner Benjamin Cummings challenges his 2010 Clay County, Florida conviction for second degree murder (count one) and possession of a firearm by a convicted felon (count three). See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1), with exhibits (Pet. Ex.). In the Petition, Petitioner raises thirty grounds for relief. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 21), with exhibits (Resp. Ex.). Petitioner then filed a Reply to Respondent's Answer to Petition for Writ of Habeas Corpus (Reply) (Doc. 24). This case is ripe for review. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## II. PROCEDURAL HISTORY

On July 30, 2009, by information, the State of Florida charged Petitioner with second degree murder of Kenneth William Davis (count one), aggravated assault of Angela Cummings[1] (count two), and possession of a firearm by a convicted felon (count three). Resp. Ex. 4. In July 2010, Petitioner proceeded to trial on counts one and two, Resp. Ex. 13, at the conclusion of which, on July 28, 2010, a jury found him guilty of second degree murder (count one), but not guilty of aggravated assault (count two). Resp. Ex. 15. Immediately after the conclusion of the trial on counts one and two, a trial on count three commenced and concluded, Resp. Ex. 16, with the jury finding Petitioner guilty of possession of a firearm by a convicted felon. Resp. Ex. 17. On August 2, 2010, the state trial court sentenced Petitioner to a term of imprisonment of forty years with a twenty-five year minimum mandatory term of imprisonment on count one, and a concurrent term of imprisonment of fifteen years with a three-year minimum mandatory term of imprisonment on count three. Resp. Exs. 20, 21.

Petitioner appealed, Resp. Ex. 22, and the First District Court of Appeal (First DCA) per curiam affirmed Petitioner's convictions and sentences without opinion on September 12, 2011. Pet. Ex. D. The First DCA denied Petitioner's motion for written opinion, rehearing, and certification on October 26, 2011, Pet. Ex. F, and the mandate on Petitioner's appeal issued on November 14, 2011. Pet. Ex. E.

On April 10, 2012[2], Petitioner filed a petition for writ of habeas corpus (State Habeas Petition) alleging ineffective assistance of appellate counsel with the First DCA.

---

[1] Angela Cummings, Petitioner's wife, is also known as Angela Clarisse Heathco.
[2] The Court gives Petitioner the benefit of the "prisoner mailbox rule." Under the "prison mailbox rule," a prisoner's *pro se* court filings are deemed filed on the date they are delivered to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988).

Pet. Ex. G. The First DCA per curiam denied the State Habeas Petition "on the merits," but without an opinion on May 15, 2012. Pet. Ex. H. Thereafter, on May 25, 2012, Petitioner filed an initial motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, Pet. Ex. I, and then an amended motion for post-conviction relief (Amended 3.850 Motion) on October 26, 2012.[3] Resp. Ex. 24. The state trial court summarily denied the Amended 3.850 Motion, Resp. Ex. 25, on November 14, 2013, and denied a request for rehearing on December 13, 2013. Pet. Ex. O. Petitioner appealed, Pet. Ex. P, and the First DCA per curiam affirmed the denial of the Amended 3.850 Motion without opinion on April 15, 2014. Pet. Ex. V; Cummings v. State, 138 So. 3d 441 (Fla. 1st DCA 2011). Petitioner's motion for rehearing was denied on May 16, 2014, and the mandate was issued on June 3, 2014. Pet. Ex. X.

Prior to the issuance of the mandate, Petitioner filed a petition for writ of certiorari with the Florida Supreme Court seeking review of the First DCA's per curiam decision on appeal from the denial of his Amended 3.850 motion. Pet. Ex. Y. The Florida Supreme Court dismissed the petition for writ of certiorari on June 11, 2014, for lack of jurisdiction. Pet. Ex. Z; Cummings v. State, 145 So. 3d 822 (Fla. 1st DCA 2014).

On July 22, 2014, Petitioner filed this Petition. The Court finds, and the Respondents concede, that this Petition is timely. Response at 7.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016),

---

[3] On October 17, 2012, the state trial court granted Petitioner leave to amend his initial motion for post-conviction relief upon finding several of the asserted claims to be facially insufficient. Pet. Ex. J.

petition for cert. filed, – U.S. - (U.S. Oct. 14, 2016) (No. 16-6444). "[T]he purpose of AEDPA is to ensure that federal habeas relief functions as 'a guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, 132 S.Ct. 38, 43 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010).

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

> For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624

(2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 135 S.Ct. 2323 (2015).

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

The AEDPA requires that "a petitioner must exhaust all state court remedies available for challenging his conviction" before he can seek federal habeas corpus relief. Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). To exhaust state court remedies, the petitioner must "fairly present" the federal claim to the state court in a manner that allows "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir. 2010) ('[I]n order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."). Additionally, "the petitioner must comply with all 'independent and adequate' state procedures." Powell v. Allen, 602 F.3d 1263, 1269 (11th Cir. 2010).

If "a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available" or has failed to comply with state procedures, the failure constitutes a procedural default. McNair v. Campbell, 416

F.3d 1291, 1305 (11th Cir. 2005); Powell, 602 F.3d at 1269 ("In the process of exhausting a [federal] claim, the petitioner must [also] comply with all 'independent and adequate' state procedures, else the petitioner will have procedurally defaulted on that claim."). Now, the Eleventh Circuit Court of Appeals applies a three-part test to determine

> when a state court's procedural ruling constitutes an independent and adequate state rule of decision. First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." Finally, the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (internal citations omitted).

Notwithstanding the procedural default, a federal court may still consider a federal claim if the petitioner can show either (1) cause and prejudice from the default; or (2) a fundamental miscarriage of justice. See Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."); Alderman v. Zant, 22 F.3d 1541, 1551 (11th Cir. 1994) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)) ("An adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"). To establish cause

for a default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice resulting from the default, a petitioner must demonstrate "that there is at least a reasonable probability that the result of the proceeding would have been different." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (citing Wright, 169 F.3d at 703; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002)). In the absence of a showing of cause and prejudice, the petitioner may rely on the fundamental miscarriage of justice exception, by demonstrating that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

With regard to a claim of ineffective assistance of counsel, a petitioner "must meet both the deficient performance and prejudice prongs of" Strickland v. Washington, 466 U.S. 668 (1984). Wong v. Belmontes, 558 U.S. 15, 16 (2009).

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show

that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Richter, 562 U.S. at 104 (citations and quotations omitted). Because both prongs of the two-part Strickland test must be satisfied to show a violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."

Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

"[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S.Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In grounds one through twenty-one of the Petition, Petitioner raises claims of ineffective assistance of counsel. Petition at 10-24. Petitioner presented these claims in his Amended 3.850 Motion. Resp. Ex. 24. The state trial court, after recognizing the applicable two-pronged Strickland standard summarily denied the Amended 3.850 Motion. Resp. Ex. 25. The First DCA affirmed the denial of the Amended 3.850 Motion

without opinion. Pet. Ex. V. Therefore, Petitioner exhausted these claims. Further, the Court concludes that the First DCA adjudicated these claims on the merits, see Richter, 562 U.S. at 99, and therefore, AEDPA deference is warranted in review of these claims. The Court will now address each claim in turn.

### A. Ground One

Petitioner asserts trial counsel was ineffective for failing to "follow up on pretrial motions and argue them, due in part, because counsel went to trial within fifty six (56) days of being appointed to represent the petitioner in a murder trial." Petition at 10. The pretrial motions Petitioner specifically refers to are the "Motion for Statement of Particulars," Resp. Ex. 5, filed on August 13, 2009; the "Motion to Compel Response to Discovery," Resp. Ex. 8, and the "Motion for Continuance," Resp. Ex. 9, each filed on March, 18, 2010; and the "Motion for Severance of Counts," Resp. Ex. 11, filed on July 13, 2010. The state trial court denied the claim stating in pertinent part that Petitioner could not demonstrate prejudice under Strickland and "[g]iven the evidence against Defendant, there [was] no reasonable probability that the outcome of the proceedings would have been different if counsel had formally followed up on the above-mentioned motions." Resp. Ex. 25 at 3. The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state trial court proceedings. In fact, the record reveals that the "Motion for

Continuance" was granted on April 14, 2010. Resp. Ex. 1. Further, while the record does not reflect a specific ruling made by the state trial court, it is evident that the state trial court implicitly granted the "Motion for Severance of Counts" because Petitioner's trial was bifurcated with count three having been tried separate and apart from counts one and two. See Resp. Exs. 13, 16. Therefore, Petitioner received the outcome he sought from the motions. Moreover, with respect to the "Motion for Statement of Particulars" and "Motion to Compel Response to Discovery," Petitioner provides only a conclusory allegation that "counsel's failure to do pre-trial follow-up on any and all motions before the court prejudiced the Defendant, and denied him a fair trial," Petition at 11, yet fails to explain *how* he was prejudiced. Such conclusory allegation of ineffective assistance of counsel is insufficient to warrant habeas relief. See Jones v. Sec'y, Fl. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Petitioner is not entitled to relief on ground one.

### B. Ground Two

Petitioner asserts that trial counsel was ineffective for failing "to have the Petitioners (sic) truck tested for his own blood trace evidence in the interior of said truck in which the Petitioner left the scene." Petition at 13. Petitioner contends his blood would have corroborated his account that he was grazed by a bullet fired by the victim. The state trial court denied the claim stating, in pertinent part, that

> . . . at trial the State presented the testimony of Ernie Simmons, a Clay County Sheriff's Office Crime Scene Technician. Officer Simmons participated in the forensic investigation of both Defendant's house and truck following

the shooting. Officer Simmons first testified that he searched throughout the interior of Defendant's house, where Defendant initially ran after the shooting, but did not find any traces of blood. (Ex. C at 44.) Officer Simmons also searched the interior of Defendant's truck and found no blood inside the vehicle. (Ex. C at 56-57.) Furthermore, the trial testimony of Rodney Padgett, a friend of Defendant, also casts doubt on Defendant's claim that the victim shot and grazed his arm. (Ex. C. at 146-47.) After the shooting, Defendant drove to Mr. Padgett's home and asked Mr. Padgett to drive him to a nearby creek. (Ex. C at 146-47.) Mr. Padgett testified that during his interaction with Defendant, he did not notice any marks, cuts or bruises on Defendant. (Ex. C at 152.) Based on the testimony cited above, the Court finds trial counsel did not perform deficiently with respect to failing to have the truck tested for blood. Furthermore, in light of Officer Simmons' testimony that there was no blood either inside Defendant's house or car, along with Mr. Padgett's testimony that Defendant had no marks or cuts, the Court finds Defendant cannot demonstrate prejudice as a result of counsel's alleged omissions.

Resp. Ex. 25 at 4. The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming there was testimony that Petitioner's blood was found in the truck, it would not have been a material fact in this case. At most, the testimony would have revealed that Petitioner, at some point in time, was injured when he was either the driver or passenger of the truck. The indication of blood in the truck would not have revealed where Petitioner was injured, how Petitioner was injured, or what injury Petitioner sustained. Further, the Court notes that Petitioner's own testimony fails to even suggest that he was ever shot at or grazed by a bullet. Thus, Petitioner fails to

demonstrate that there was a reasonable probability that the outcome of the proceedings would have been different. Petitioner is not entitled to relief on ground two.

### C. Ground Three

Petitioner asserts that trial counsel was ineffective for failing to subpoena and call as an expert witness, the emergency medical technician (E.M.T.) who treated him at the time of his arrest. Petitioner contends that the E.M.T. would have refuted the "prosecutor's claims that [Petitioner's] injuries were from thorn bushes." Petition at 16. The state trial court denied the claim stating that "Defendant has failed to demonstrate that trial counsel performed deficiently or that he suffered prejudice as a result of counsel's alleged omissions." Resp. Ex. 25 at 5. To reach this conclusion, the state trial court relied on the following testimony from trial: (1) "Deputy Clark indicated that Defendant was found wrapped in the branches of a thorn bush," (2) "Deputy Clark also opined that the injuries to Defendant's arms were consistent with being scraped by the thorn bushes," (3) "Officer Simmons testified that there was no blood found either inside Defendant's house or truck," and (4) "Mr. Padgett testified that he did not observe any cuts or injuries to Defendant prior to dropping him off at the creek where he was later apprehended." Resp. Ex. 25 at 5. The First DCA affirmed the state trial court's denial of this claim.

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). As such, "the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir.

2007) (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir.1983)). Here, given there was not even a hint of evidence that the victim possessed a gun or shot a gun, and the fact that Petitioner's own testimony does not place a gun in the victim's hand, Petitioner's conclusory claim that the E.M.T's testimony would have refuted the "prosecutor's claims that [Petitioner's] injuries were from thorn bushes" is speculative. Therefore, if trial counsel chose not to introduce the testimony of the E.M.T., it was not a decision "so patently unreasonable that no competent attorney would have chosen it."

In light of the evidence presented in the state court proceedings, the Court does not find that the state appellate court's adjudication of this claim was unreasonable. Further, the Court concludes that the state appellate court's adjudication of the claim was neither contrary to clearly established federal law nor did not involve an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to relief on ground three.

### D. Ground Four

Petitioner asserts that trial counsel was ineffective for failing to seek a psychological expert witness to explain "post-traumatic stress" and how it affected Petitioner. Petition at 18. The state trial court denied the claim stating that

> While a psychological expert may have been able to provide testimony concerning Defendant's inability to remember the events during a video-taped interview shortly after the incident, the testimony would not have overcome the overwhelming evidence indicating that Defendant shot an unarmed victim. (Ex. C.) <u>Rimmer v. State</u>, 50 So. 3d 763,778 (Fla. 2010). Because there is no reasonable probability that the outcome of the proceeding would have been different if a psychologist had testified about post-traumatic stress as related to Defendant's actions following the shooting, Defendant is not entitled to relief for this claim.

Resp. Ex. 25 at 5-6. The First DCA affirmed the state trial court's denial of this claim.

Upon due consideration, the Court agrees with the state trial court that Petitioner has failed to demonstrate prejudice. As such, Petitioner has failed to demonstrate that the state appellate court's adjudication of the claim was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground four.

### E. Grounds Five and Nine

In grounds five and nine, Petitioner asserts that trial counsel was ineffective for failing to seek a firearms expert or cross-examine the State's firearms expert witness, Maria Pagan regarding the diameter of the shotgun blast or the spread of the pellets as it related to where the victim was struck. Petitioner alleges such testimonies would have "cast doubt on the Defendant's guilt as to intentionally shooting the victim" and support his claim "that he was not aiming directly at the victim, but over his head as a warning shot." Petition at 22. The state trial court denied ground five stating

> . . . Defendant cannot demonstrate prejudice as a result of counsel's alleged omissions. While testimony from another firearms expert or cross-examination of the State's firearms expert could have proved limited testimony in support of Defendant's claim that he did not intentionally shoot the victim, such testimony would not have been beneficial to Defendant's asserted defense at trial. As alleged in grounds two and three, Defendant's primary defense at trial was that his shooting of the victim constituted justifiable use of deadly force. The jury instruction for this defense states that if a defendant was not engaged in illegal activity and was attacked in a place where he had a right to be, he had no duty to retreat. Rather, there was a right to stand his ground and to meet force, including deadly force, if it was reasonable believed to be necessary to prevent great harm or death to himself or another. (Ex. C at 283-86.) By raising this defense,

> Defendant conceded that he used deadly force on the victim,
> but only because he reasonable believed it was necessary to
> prevent death or great bodily harm to himself or another. As
> such, the Court finds that any argument or testimony in
> support of Defendant's assertion that he never meant to shoot
> the victim could have had a negative impact on the jury as to
> the issue of whether Defendant's use of deadly force was
> justifiable.

Resp. Ex. 25 at 6-7. The state trial court denied ground nine "for the same reasons articulated in Ground Five" stating "the Court finds that Defendant cannot demonstrate he was prejudiced by counsel's failure to cross-examine Ms. Pagan about pellet spread." Resp. Ex. 25 at 10. The First DCA affirmed the state trial court's denial of these claims.

The state trial court's application of the <u>Strickland</u> standard was not unreasonable. Intent to kill is not an element of second degree murder or a self-defense claim. <u>See</u> Fla. Std. Jury Instr. 7.4 (Crim.) (2005) ("In order to convict of Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death."). Therefore, testimony regarding the diameter of the shotgun blast or the spread of the pellets was neither material to the case nor obviously advantageous to Petitioner's self-defense theory.

Accordingly, upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on grounds five and nine.

**F. Ground Six**

Petitioner asserts trial counsel was ineffective for failing to seek a medical expert to testify regarding the drugs and alcohol found in the victim's system and the "possible effects" such drugs could have had on the victim. Petition at 25. The state trial court denied the claim stating

> . . . counsel was not deficient in failing to obtain an independent medical expert. On direct examination, the State elicited testimony from the medical examiner indicating that the victim had drugs and alcohol in his system. (Ex. C at 190-91.) On cross-examination, defense counsel elicited testimony from Dr. Rao elaborating on the drugs and alcohol found in the victim's system. (Ex. C at 191-92.) Based upon the testimony elicited from Dr. Rao, the Court finds defense counsel's failure to call an independent medical expert was not outside the wide range of reasonable professional assistance. Through Dr. Rao, counsel was able to present evidence to the jury indicating that the victim had alcohol, cocaine and hydrocodone in his system at the time of his death. Had counsel call an independent medical expert, the expert's testimony would have been limited to whether or not such drugs were found in the victim's system and would have been cumulative to that presented by Dr. Rao. Accordingly, the Court finds counsel's performance was not deficient under Strickland. Furthermore, because the effect of such drugs varies with each individual, it is unlikely that another medical expert could have given an opinion on how the drugs would have impacted this particular victim on the date of the incident. Consequently, the Court finds Defendant has failed to demonstrate that the outcome of the proceedings would have been different but for counsel's failure to call an independent medical expert.

Resp. Ex. 25 at 7-8. The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground six.

### G. Grounds Seven and Ten[4]

Petitioner asserts that trial counsel was ineffective for failing to cross-examine Detective McGuinness and Deputy Monson regarding the scene of the crime. Defendant alleges he "had reasons to believe Angela had picked up a handgun that the victim held behind his back, and later sold said gun," Petition at 28, or "someone picked [the gun] up from the crime scene." Petitioner at 37. Therefore, Petitioner contends that trial counsel should have questioned the detectives about "did they consider [Angela Cummings] a co-conspirator? Did they search her person for any weapons?" Petition at 28, "if the crime scene was taped off? What time did [Detective Monson] arrive at the crime scene? Did [Detective Monson] sign a crime scene log?" Petition at 37. Further, Petitioner alleges trial counsel "missed an opportunity" to question Detective McGuinness about the contents of the victim's wallet. Petition at 28. The state court denied the claim stating

> . . . Detective McGuinness testified on direct examination that he did a protective sweep of the crime scene, including a check for any weapons to ensure the safety of all involved. (Ex. C at 108-09.) This protective sweep revealed nothing in the area where the victim's body was found. (Ex. C at 108-09.) Moreover, the only suggestion that the victim had a handgun was based on Defendant's renewed memory eight months after the incident. (Ex. C at 207.) Even then, Defendant only testified that he saw the victim reach into his truck and that the victim had his hand behind his back. (Ex. C at 205-06.) Defendant acknowledged, however, that he never saw any handgun. (Ex. C at 222.) In sum, the only indication that the victim had a handgun was based on the belated assertions of Defendant, who readily admitted that he did not actually see a gun. Further, had defense counsel questioned Detective McGuinness or Deputy Monson as to

---

[4] In denying relief, the state trial court addressed grounds seven and ten together. Following suit, Respondents also addressed these grounds in tandem. Consistent therewith, the Court will do likewise.

> Defendant's theory that the victim had a gun which was removed from the crime scene, the State could have countered on redirect that neither Detective McGuinness nor Deputy Monson would have been aware of Defendant's suspicions because Defendant fled the scene immediately after the incident and prior to their arrival. Such questioning could have given the State another opportunity to focus on Defendant's fleeing the scene immediately following the shooting, which could have had a negative impact on the jury. For all the reasons above, the Court finds Defendant has failed to demonstrate that counsel performed deficiently or that the outcome of the proceedings would have been different absence counsel's alleged omissions.

Resp. Ex. 25 at 9. The First DCA affirmed the state trial court's denial of these claims.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on grounds seven and ten.

### H. Ground Eight

Petitioner asserts trial counsel was ineffective for failing to cross-examine Deputy Clark regarding his opinion about Petitioner's wounds. At trial, when the prosecutor asked "[d]id you observe any injuries to Mr. Cummings?," Deputy Clark responded that "yes, sir. [Petitioner] had cuts on his arms from thorn bushes - - what appeared to be from thorn bushes." Resp. Ex. 13 at 113. The state denied the claim stating that

> Without reaching the issue of whether counsel was deficient, the Court finds Defendant cannot demonstrate prejudice as a result thereof. As noted supra with respect to Defendant's second and third grounds for relief, Officer Simmons testified that there was no blood found either inside Defendant's house or the truck he drove away, which would seemingly be expected if Defendant had been grazed by a bullet. In addition, Mr. Padgett testified that he didn't not observe any

18

> cuts or injuries to Defendant prior to driving Defendant to the creek where he was subsequently found in the thorn bushes. In light of the substantial amount of evidence indicating that Defendant was not injured until after being dropped off at the creek by Mr. Padgett, the Court finds Defendant has failed to demonstrate prejudice as a result of counsel's failure to cross-examine Deputy Clark.

Resp. Ex. 25 at 10. The First DCA affirmed the state trial court's denial of this claim.

Petitioner fails to show that the state appellate court's adjudication of the claim was unreasonable. As the state trial court stated, Petitioner fails to demonstrate prejudice. Petitioner does not discuss what testimony would have been elicited from the cross-examination of Deputy Clark that would have aided his defense, and thus, with the evidence presented at trial there was no reasonable probability that outcome the proceedings would have been different. Further, Petitioner does not demonstrate that the state appellate court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on ground eight.

## I. Ground Eleven

Petitioner asserts trial counsel was ineffective for failing to impeach Angela Cummings "with inconsistencies in her testimony when she testified about her alleged injuries she received while trying to flee the area." Petition at 39. At trial, when asked did she receive any injuries from being dragged down the roadway, Angela Cummings responded "yes sir" on her "feet, arm and hip." Resp. Ex. 13 at 133. Angela Cummings was not asked to elaborate on the details regarding the injuries. Yet, Petitioner alleges that the State "made a dramatic reference to these injuries, that were intended to inflame the jury." Petition at 40. Petitioner contends that trial counsel "should have addressed

these issues of injuries to expose the lack of any evidence to support these claims," ultimately having Angela Cummings admit that she refused any medical treatment. Petition at 40. The state trial court denied the claim stating that

> Having reviewed the record, the Court does not find counsel's failure to question Mrs. Cummings regarding her injuries constitutes deficient performance under <u>Strickland</u>. (Ex. C at 137-43.) Defendant was charged with the second degree murder of Kenneth William Davis. Therefore, any inquiry regarding the lack of evidence to support Mrs. Cummings' injuries was not a significant issue in this case. Furthermore, testimony provided by Mrs. Closs[o]n corroborated Mrs. Cummings' testimony that Defendant hit her in the shoulder with the barrel of the shotgun before Defendant went outside and shot Kenneth Davis. (Ex. C at 73-74.) Furthermore, Defendant's own testimony suggests that Mrs. Cummings likely was injured after the shooting when attempting to flee the scene by jumping into the bed of Mrs. Closson's truck. (Ex. C at 209.) For the reasons stated above, the Court finds Defendant has failed to demonstrate counsel's performance was deficient, or that there is a reasonable probability that, but for counsel's alleged deficiencies in cross-examining Mrs. Cummings, the results of the proceedings would have been different.

Resp. Ex. 25 at 11. The First DCA affirmed the state trial court's denial of this claim.

As the state trial court stated, Petitioner fails to demonstrate counsel's performance was deficient or that Petitioner was prejudiced. First, Petitioner fails to allege any inconsistencies with Angela Cummings testimony. Second, whether Angela Cummings received any medical treatment was irrelevant to the second degree murder charge, and to the extent it was even remotely relevant to establishing aggravated assault, Petitioner was acquitted of that charge.

Therefore, after thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and

was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground eleven.

## J. Ground Twelve

Petitioner asserts trial counsel was ineffective for failing to object to Kim Sutton's testimony that Petitioner was standing over the victim "confused because he just killed someone, after she had just testified she did not see anything, only heard a shot fired." Petition at 42. The state trial court denied the claim stating that

> Initially, the Court finds Mrs. Sutton's statement was not necessarily prejudicial. At trial and in the instant Motion, Defendant does not dispute that he was the person who fired the weapon that fatally wounded Kenneth Davis. Rather, he maintained that he fired the weapon in self-defense. Moreover, a significant issue was Defendant's apparent confused state and lapses of memory during his initial interview with detectives shortly after the shooting. To explain Defendant's confused state, trial counsel attempted to elicit testimony from Detective Matos regarding a person's state of mind immediately following his involvement in a traumatic event such as a shooting. (Ex. C at 175-180.) For this reason, the Court finds Mrs. Sutton's opinion as to why Defendant was dazed and confused arguably supported Defendant's claims and certainly does not rise to the level of finding a reasonable probability that, but for counsel's alleged deficiencies in cross-examining Mrs. Sutton, the result of the proceeding would have been different.

Resp. Ex. 25 at 12. The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground twelve.

**K.  Ground Thirteen**

Petitioner asserts that trial counsel was ineffective for failing to impeach "Cheryl Closs[o]n with inconsistencies in her prior statements, and trial testimony."  Petition at 45. Petitioner alleges that Cheryl Closson's testimony that Petitioner struck Angela Cummings twice with the shotgun was inconsistent with Angela Cumming's testimony that she was struck once with the shotgun.   Further, Petitioner alleges there are "inconsistent statements in her police statements and depositions, that could have been mentioned to show the jury that Cher[y]l Closs[o]n in making her statements, continued to change events to better suit the facts, and opinions of events the State made in presenting its case before the jury."  Petition at 46.   The state trial court denied the claim stating that

> As a practical matter, given the force with which Mrs. Closs[o]n indicated Defendant hit Mrs. Cummings, it is possible that Mrs. Cummings did not realize how many times she was hit by Defendant.  Furthermore, whether it was once or twice, both Mrs. Closs[o]n and Mrs. Cummings testified that Defendant did, in fact, hit Mrs. Cummings with the barrel of the shotgun prior to going outside and shooting the victim. Accordingly, the Court finds Defendant has not demonstrated a reasonable probability that, but for counsel's alleged deficiencies in cross-examining Mrs. Closs[o]n, the result of the trial would have been different.

Resp. Ex. 25 at 13.  The First DCA affirmed the state trial court's denial of this claim.

Petitioner asserts there were inconsistent statements made by Cheryl Closson, but he fails to specify what statements were inconsistent.  Instead, Petitioner discusses an alleged conflict between Cheryl Closson's testimony and Angela Cummings' testimony. This alleged conflict however was presented to the jury for the jury's consideration.  As

these testimonies were elicited to establish aggravated assault and Petitioner was ultimately acquitted of that charge, Petitioner fails to demonstrate prejudice.

Therefore, the state appellate court's adjudication of the claim was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, the Court does not find that the state appellate court's adjudication of the claim was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on ground thirteen.

### L. Ground Fourteen

Petitioner asserts trial counsel was ineffective for failing to object to the showing of a redacted videotaped version of his interview with the police and for failing to have his interview played in its entirety. Petitioner alleges the redacted videotape showed him "coherent and responsive to the questions put before him," which portrayed him "in an unfavorable light in front of the jury." Petition at 49-50. Whereas, Petitioner alleges the videotape viewed in its entirety showed that Petitioner nodded off during the interview and was confused, nonresponsive at times, and stressed. Petition at 50. Petitioner argues the videotape viewed in its entirety accurately portrayed his state of mind and "would have aided the defense in explaining [Petitioner's] actions as to why he left the scene of the crime." Petition at 50. The state trial court denied the claim stating that "[d]uring cross-examination of Detective Matos, counsel asked questions about Defendant's demeanor, including whether he had lapses in memory; needed help 'filling in the blanks;' and whether there were numerous pauses throughout the interview. (Ex. C at 175-80.) Defendant, therefore, cannot demonstrate he was prejudiced by counsel's

failure to object to the redacted version of the interview or for failing to have the entire video played." Resp. Ex. 25 at 13-14. The First DCA affirmed the state trial court's denial of this claim.

At trial, the following exchange, in relevant part, occurred between trial counsel and Detective Matos:

> Q. And after he was taken into custody and taken into the interview room eventually, there was probably no more then a couple of hour[s] had elapsed from the time of the shooting until the time that you actually sat down in the interview room with him?
>
> A. Yes, ma'am.
>
> Q. Now, the actual interview itself lasted for several hours. What we just saw today in court was actually just a shortened version of that, about an hour and a half version?
>
> A. Yes, ma'am.
>
> Q. Mr. Cummings, would you agree, had a hard time remembering a lot of details throughout the interview?
>
> A. Yes, ma'am.
>
> Q. And, in fact, throughout part of the interview you were trying to help him fill in the blanks with some of the information, correct?
>
> A. Yes, ma'am.
>
> . . . .
>
> Q. Now detective, you would agree that throughout several portions of the interview that you had with Mr. Cummings there were times when he would pause for a lengthy period of time to try and recollect what actually happened?
>
> A. Yes, ma'am. There were numerous pauses, yes, ma'am.

Q. And, obviously, the interview was recorded. But Mr. Cummings wasn't told that the interview was recorded, correct?

A. No, ma'am.

Q. You, obviously, knew that it was being recorded right?

A. Yes, ma'am.

Q. And as Mr. Cummings had these numerous lapses in his memory, you were obviously trying to help fill in the details for him to try and help, I guess, aid his memory?

A. If a can correct my last - - it wasn't to fill in it was just to help him remind. Just to help him tell me the truth.

Resp. Ex. 13 at 175-180. These elicited responses by Detective Matos sufficiently conveyed to the jury that during the interview Petitioner was confused and nonresponsive at times. Petitioner fails to show that a review of the additional two hours of the videotape by the jury was necessary, or that with the jury's review of the entire videotape, it was probable that the trial's outcome would have been different. Thus, the state appellate court's adjudication of the claim was not unreasonable in light of the evidence presented at trial. Further, the denial of this claim was neither contrary to clearly established federal law nor did it involve an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to relief on ground fourteen.

**M. Ground Fifteen**

Petitioner asserts trial counsel was ineffective for failing to conduct and pursue discovery, and forging Petitioner's signature on the stipulation regarding the victim's identity. The state trial court denied the claim stating that

As a basis for this claim, Defendant alleges that *he* does not have the discovery. Whether or not Defendant possesses the

State's discovery does not correlate to counsel's failure to obtain discovery to prepare for trial. This claim is baseless and without merit. Defendant had demonstrated neither ineffective assistance of counsel nor prejudice. As to Defendant's claim that his signature was forged, this claim is also meritless. The signature on the stipulation clearly matches the one on Defendant's amended motion.

Resp. Ex. 25 at 14 (emphasis in original). The First DCA affirmed the state trial court's denial of this claim.

In support of his claim that trial counsel failed to conduct and pursue discovery, Petitioner relies on the "Motion to Compel Response to Discovery" (Discovery Motion) filed on March 18, 2010, Resp. Ex. 8, that was not expressly ruled on by the state trial court. In the Discovery Motion, trial counsel argued that the State failed to provide (1) the law enforcement reports regarding the investigation and arrest of Petitioner, (2) any recorded statements of witnesses against Petitioner, (3) any video or audio recordings of those witnesses, (4) any statements by Petitioner or any video or audio recordings of those statements, (5) the recordings of 911 calls and dispatch logs, or (6) any reports from emergency responders. The Court notes that at the same time trial counsel filed the Discovery Motion, trial counsel also filed a motion for continuance of the trial on the basis, in part, that the State had failed to produce discovery. See Resp. Ex. 9. The motion for continuance was granted and the trial was postponed until July 2010. Given the trial proceeded without further delay, it can be reasonably inferred that trial counsel received the discovery sought in the Discovery Motion without further action from the state trial court.

Even assuming trial counsel did not receive the requested discovery, Petitioner fails to demonstrate that he was prejudiced by the lack of discovery. While Petitioner

alleges the reports from the E.M.T. "would have aided the defense as to [Petitioner's] wounds," Petitioner's allegation is speculative. Petition at 55. Other than this speculative allegation, Petitioner does not provide what, if anything, the discovery would have revealed in aid of his defense or show that there was a probability that the outcome of the trial would have been different had the discovery been provided.

Therefore, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground fifteen.

### N. Ground Sixteen

Petitioner asserts trial counsel was ineffective for "failing to object or ensure that [Petitioner] participated in all bench conferences- side bars, with counsel" during trial. Petition at 56. The state trial court denied the claim stating that

> "A defendant has a constitutional right to be present at all 'crucial stages of his trial where his absence might frustrate the fairness of the proceedings.'" Orme v. State, 896 So. 2d 725, 738 (Fla. 2005) (quoting Garcia v. State, 492 So. 2d 360 (Fla. 1986)). However, the right to be present at all crucial stages of the trial does not confer upon a defendant the right to be present at every conference at which the matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed. Morris v. State, 931 So. 2d 821 (Fla. 2006). Accordingly, the constitutional right does not extend to bench conferences involving purely legal matters because a defendant's presence at such conferences would be of no assistance to counsel. Morris v. State, 931 So. 2d 821 (Fla. 2006). Furthermore, pursuant to Florida Rule of Criminal Procedure 3.180(b), when a defendant is physically present at a courtroom proceeding, his or her right to participate in a side bar conference is satisfied if he or she is given a

meaningful opportunity to participate through counsel. <u>Lamarca v. State</u>, 931 So. 2d 838 (Fla. 2006). For the reasons above, Florida courts have repeatedly rejected claims of ineffective assistance resulting from a defendant's absence during a bench conference when the defendant has failed to show that anything was discussed at the conference that required the defendant's consultation. See, e.g., <u>Orme</u>, 896 So.2d at 738 (concluding that defendant failed to demonstrate prejudice from his absence because he "has not shown that anything discussed during the bench conference required his consultation"); <u>Vining v. State</u>, 827 So. 2d 201, 218 (Fla. 2002) (determining that defendant "has not shown that any matter discussed during these bench conferences required his consultation nor has he demonstrated any prejudice from his absence"). In the instant case, Defendant has not established that anything was discussed during the side bar conferences that required his consultation. Nor has he established that the conference[s] involved anything but purely legal matters to which his constitutional right to be present does not extend. Accordingly, the Court finds that Defendant has failed to demonstrate under <u>Strickland</u> that he was prejudiced by counsel's conduct.

Resp. Ex. 25 at 14-15. The First DCA affirmed the state trial court's denial of this claim.

As the state trial court recognized, Petitioner "had no constitutional right to be present at the bench during conferences that involved purely legal matters." <u>In re Shriner</u>, 735 F.2d 1236, 1241 (11th Cir. 1984). Petitioner has failed to alleged, or present any evidence showing that the four bench conferences he cites involved anything other than purely legal matters. As a result, Petitioner fails to demonstrate that the state appellate court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground sixteen.

**O. Ground Seventeen**

Petitioner asserts trial counsel was ineffective for failing to call any witness to testify for the defense, except for Petitioner. Petitioner alleges that: (1) he was "compelled to testify" because counsel was calling no other witnesses; (2) he requested trial counsel present Rodger Johnson as a defense witness; and (3) trial counsel should have called expert witnesses. The state trial court denied the claim stating

> The record reflects that the Court ascertained that Defendant freely exercised his right to testify on his own behalf. (Ex C at 194-95.) The record also reveals that Defendant told the Court that he told previous counsel about the Rodger Johnson, and she tried to locate Mr. Johnson, but he ran. Defendant's own statements to the Court indicate that Mr. Johnson was unavailable as a witness. (Ex. C at 275-76.) A defendant cannot establish ineffective assistance of counsel based on counsel's failure to call a witness who is unavailable. White v. State, 964 So. 2d 1278, 1286 (Fla. 2007). In regard to expert witnesses counsel should have called, this Court has already dealt with counsel's alleged failure to call a psychologist; a firearms expert; and an independent medical expert in Grounds Four, Six, and Nine, respectively, and found that Defendant failed to establish that he was prejudiced by this alleged omission.

Resp. Ex. 25 at 15-16. The First DCA affirmed the state trial court's denial of this claim.

Again "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters, 46 F.3d at 1512. As such, "the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (internal quotations omitted). Petitioner fails to specify the alleged testimony that was to be provided from the various witness, including Rodger Johnson that would have changed the outcome of the proceedings. Further, with respect to Rodger Johnson, Petitioner does not dispute that Rodger Johnson was unavailable.

Therefore, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on ground seventeen.

**P. Ground Eighteen**

Petitioner asserts trial counsel was ineffective during closing arguments because trial counsel made statements that contradicted the defense's theory of the case and Petitioner's testimony about what Petitioner believed was being held behind the victim's back. The state trial court denied the claim stating

> Defendant has taken counsel's statement out of context. Counsel was simply acknowledging that the victim did not, in fact, have a gun in his hand. She then went on to further explain that it was unknown how the victim was positioned, and that his concealed hand caused Defendant to be apprehensive and in fear for his life. (Ex. C at 269.) Counsel was not deficient, nor was Defendant prejudiced by counsel's acknowledgement of this fact.

Resp. Ex. 25 at 18. The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court does not find that trial counsel's closing argument, as a whole, contradicts the defense's theory. Trial counsel stated that "Mr. Cummings told you that he could not see Mr. Davis' right hand. And obviously it was a cigarette butt." Ex. 13 at 269. Trial counsel went on to say, however, that "[w]e don't know how [the victim] was positioned but something was concealing that hand from Mr. Cummings to the point that he became overly apprehensive and in serious fear for his life." Ex. 13 at 269. This was consistent with the defense's theory and provided the jury the opportunity to infer from trial counsel's closing argument that Petitioner acted in self-

defense.  Therefore, the state appellate court's adjudication of the claim was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Moreover, Petitioner fails to demonstrate that the state appellate court's adjudication of the claim was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on ground eighteen.

## Q. Ground Nineteen

Petitioner asserts trial counsel was ineffective for failing to object to the standard jury instruction on justifiable use of deadly force because it imposed a duty to retreat.  The state trial court denied the claim stating

> Having reviewed the jury instructions charged at trial, the Court finds that no instruction erroneously imposed upon Defendant the duty to retreat.  (Ex. C at 285.)  As charged, the jury instruction on justifiable use of deadly force as a whole was based entirely on Florida's Standard Jury Instruction 3.6(f).  The Florida Supreme Court has held that "'trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient.'" Rodriguez, 919 So. 2d 1252, 1272 (Fla. 2002) (quoting Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000)).  As the standard jury instruction has not been invalidated, counsel's performance cannot be deemed deficient.

Resp. Ex. 25 at 17.  The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Petitioner is not entitled to relief on ground nineteen.

### R.  Ground Twenty

Petitioner asserts trial counsel was ineffective for failing to "object to the absence" of a jury instruction that the state must prove beyond a reasonable doubt that Defendant did not act in self-defense.  Petition at 67.  The state trial court denied the claim stating

> Self-defense is not an element of murder that must be proven beyond a reasonable doubt. §782.04(2), Fla. Stat. (2009); Mosansky v State, 33 So. 23d 756, 758 (Fla. 1st DCA 2010). Rather, self-defense is "'an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense.'"  Smith v. State, 76 So. 3d 379, 383 (Fla. 1st DCA 2011) (quoting Mosanky, 33 So. 3d at 758).  It was clear from the record that counsel committed no error, nor can Defendant demonstrate prejudice from counsel's failure to make a frivolous objection not grounded in law.

Resp. Ex. 25 at 17.  The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Petitioner is not entitled to relief on ground twenty.

### S.  Ground Twenty-One

Petitioner asserts trial counsel was ineffective for failing to object to "prosecutorial misconduct" during closing arguments.  Petition at 70.  Specifically, Petitioner contends trial counsel should have objected to: (1) comments regarding that domestic issues should be taken up in divorce court, (2) argument that Petitioner's motive for the offense was that he was in a "jealous rage" or a "killing spouse," (3) the statements: "Whatever you say—maybe you're saying to your wife, Honey this won't hurt that bad.  I am really

doing this for your behavior- or benefit and I really love you. Wham! Wham!" Petition at

71.  The state trial court denied the claim stating that

> As to the first and second comments, that the offense was a
> domestic issue and that Defendant was in a jealous rage
> when he killed the victim, the Court finds that these comments
> were not outside the evidence presented; what could be
> reasonably inferred from the evidence; or a reasonable
> interpretation of the evidence. (Ex. C at 68-77; 122-37; 194-
> 242.)  Counsel was not deficient for failing to object to these
> comments.  As to comment three, without reaching whether
> counsel was deficient, the Court finds that Defendant cannot
> demonstrate he was prejudiced by this comment, as he was
> not found guilty of aggravated assault.  (Ex. A.)  Defendant is
> not entitled to relief for this claim.

Resp. Ex. 25 at 18.  The First DCA affirmed the state trial court's denial of this claim.

Upon thorough review of the record, the Court concludes that the state appellate

court's adjudication of the claim was not contrary to clearly established federal law, did

not involve an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings.  Petitioner is not entitled to relief on ground twenty-one.

### T.  Grounds Twenty-Two through Twenty-Four

In grounds twenty-two through twenty-four, Petitioner asserts trial court error and

lack of evidence to convict.  Respondents contend these claims are not exhausted and

procedurally barred on three independent basis: (1) Petitioner did not present these

claims to the state trial court as those involving a violation of his rights under the United

States Constitution; (2) the state trial court denied Petitioner's claims relying on an

independent, adequate and regularly enforced state procedural bar; and (3) Petitioner did

not present the state trial court's denial of these claims to the state appellate court in his

initial brief on post-conviction appeal. The Court agrees these claims are procedurally barred.

Petitioner presented grounds twenty-two through twenty-four to the state trial court in his Amended 3.850 Motion. The state trial court denied grounds twenty-two and twenty-three stating that the "claims of trial court error are not cognizable in a motion for postconviction relief." Resp. Ex. 25 at 19. Further, the state trial court denied ground twenty-four stating that "to the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him, Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief." Resp. Ex. 25 at 19. The First DCA affirmed the denial of these claims based on the state trial court's procedural bar determination. See Mason, 605 F.3d at 1119 n.2 ("When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons given in the last reasoned decision."). Thus, because the state court denied these claims after clearly and expressly relying on a state procedural rule that was not "intertwined with an interpretation of federal law" and was adequate, the claim is barred from federal review. Petitioner has not established a cause and prejudice exception, nor has he shown that there would be a fundamental miscarriage of justice to overcome the bar. See Smith, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Petitioner is not entitled to relief on grounds twenty-two through twenty-four.

## U. Grounds Twenty-Five through Twenty-Seven

In grounds twenty-five through twenty-seven, Petitioner asserts that he "was denied due process guaranteed him under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution." In ground twenty-five, Petitioner alleges the state trial court "failed to instruct the jury on the lesser-included offense of manslaughter by act." Petition at 81. In ground twenty-six, Petitioner alleges the state trial court "committed fundamental error in instructing the jury with the standard jury instruction on 'justifiable use of deadly force' because the instruction erroneously imposed a duty to retreat." Petition at 84. In ground twenty-seven, Petitioner alleges the state trial court "committed fundamental error in instructing the jury on the doctrines of justifiable and excusable homicide because the instructions erroneously imposed upon petitioner the burden to prove justifiable and excusable homicide." Petition at 87. Petitioner presented similar, but not identical claims on direct appeal with the First DCA asserting that the "[t]he trial court committed fundamental error" for its instructions and failure to instruct. Pet. Ex. A at 2. The First DCA affirmed Petitioner's convictions and sentences.

Respondents contend that Petitioner's claims are unexhausted and procedurally barred. Further, Respondents contend that notwithstanding the bar, Petitioner's claims are without merit. The Court agrees with Respondents that Petitioner's claims are procedurally barred.

Petitioner must "fairly present" his federal claim to the state courts and exhaust all state court remedies before he can seek federal habeas corpus relief. See, e.g., Ward, 592 at 1156 ('[I]n order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or

on collateral review."). Here, Petitioner relied solely on state law to argue these claims on direct appeal. See Pet. Ex. A. Petitioner did not cite to any federal authority or the United States Constitution in his initial brief or reply brief to put the state courts on notice of a federal claim. Thus, Petitioner failed to exhaust his federal due process claims with the state courts. Further, because Florida's procedural rules do not provide for successive direct appeals, Petitioner's due process claims are procedurally defaulted. Petitioner has not established a cause and prejudice exception, nor has he shown that there would be a fundamental miscarriage of justice to overcome the default. See Smith, 256 F.3d at 1138. Petitioner is not entitled to relief on grounds twenty-five through twenty-seven.

## V. Grounds Twenty-Eight and Twenty-Nine

In grounds twenty-eight and twenty-nine, Petitioner asserts his federal due process rights were violated "due to prosecutor misconduct for attacking defense counsel's failure to obtain an expert witness" and "for asking jury if witnesses were traumatized." Petition at 89, 92. Specifically, Petitioner alleges the state prosecutor committed misconduct by stating, during his closing argument, the following statements:

> Now, we go into this thing of let's raise the defense of some kind of post-traumatic trauma whatever. When you don't have a psychologist or doctor going into any of that. . .

Resp. Ex. 13 at 249.

> Think about the other witnesses. You don't think Julie Hilbrand was traumatized. You don't think Kim Sutton was traumatized. You don't think all those people that maybe thought this guy was having a heart attack, that got out of their cars to help, going up there was – weren't traumatized. You don't think Cheryl Closson was traumatized. Yes, what happens? They can all remember. All the trauma and serious

> impact on them and what? They don't have any, kind of, lack
> of memory or any memory coming back from a nightmare.

Resp. Ex. 13 at 249-50.

Respondents contend Petitioner's claims are unexhausted and procedurally barred. This Court agrees.

In the Petition, Petitioner states he raised these claims in his State Habeas Petition. Petition at 91, 92. However, Petitioner's claims in the State Habeas Petition was that appellate counsel was ineffective for failing to raise the "prosecutor misconduct." Pet. Ex. G at 25-26, 28-29. Petitioner did not raise a due process claim in his State Habeas Petition. Further, there is nothing in the record indicating Petitioner presented these claims to the state courts at all. Therefore, Petitioner did not exhaust his federal due process claims in the state courts. Further, because Florida state procedural rules do not provide for successive direct appeals, Petitioner's due process claims are procedurally defaulted. Petitioner does not argue and has not established a cause and prejudice exception,[5] nor has he shown that there would be a fundamental miscarriage of justice to overcome the default. See Smith, 256 F.3d at 1138. As a result, Petitioner is not entitled to relief on ground twenty-eight or ground twenty-nine.

---

[5] The Court is mindful that an ineffective assistance of counsel claim may be asserted to establish "cause" for a procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986) ("Ineffective assistance of counsel, then, is cause for a procedural default."). However, Petitioner does not argue a claim of ineffective assistance of counsel in either his Petition or Reply as "cause" for the procedural default here. Moreover, to the extent the Court should consider Petitioner's claims of ineffective assistance of appellate counsel in the State Habeas Petition, the claims fail to assert that appellate counsel was ineffective for failing to present a federal claim. Therefore, Petitioner's potential ineffective assistance of counsel claims are not exhausted and cannot be used to establish "cause." See Pet. Ex. G at 28-29; Murray, 477 U.S. at 489 ("a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

**W. Ground Thirty**

Petitioner asserts that the First DCA violated his federal due process rights by failing "to read and evaluate the Petitioner[']s Initial Brief, challenging the lower court[']s denial of his Motion for Post-Conviction Relief, of which the Petitioner appealed." Petition at 95. Federal habeas relief is only available on the basis that a state prisoner is "in custody pursuant to the judgment of a State court" in violation of the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a). "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment-*i.e.,* the conviction itself." Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009). As a result, "defects in state collateral proceedings do not provide a basis for habeas relief." Id.; see Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir.2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Here, Petitioner claims a defect in the First DCA's review of his Amended 3.850 Motion and not the legality of his conviction. Therefore, Petitioner's claim is not a cognizable federal habeas claim. Petitioner is not entitled to relief on ground thirty.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED,** and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[6] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of June, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sflc

c:    Benjamin Cummings
       Counsel of Record

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.